# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

WENDELL GREEN,

      Petitioner,                         CASE NO. 08-CV-10387

*v.*                                   DISTRICT JUDGE PAUL D. BORMAN
                                       MAGISTRATE JUDGE CHARLES E. BINDER

RAYMOND BOOKER,
Warden,

      Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
### ON PETITION FOR WRIT OF HABEAS CORPUS

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Petition for Writ of

Habeas Corpus be **DENIED**.

## II.    REPORT

### A.    Introduction

Petitioner Wendell Green, who is presently confined at the Ryan Correctional Facility in

Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In

his *pro se* application, Petitioner challenges his convictions for being a felon in possession of a

firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during the commission of a

felony, third offense, MICH. COMP. LAWS § 750.227b.  On January 23, 2009, the case was referred

to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b).  (Doc. 7.)  A response to the

petition was filed on August 8, 2008.  (Doc. 5.)  Accordingly, the case is ready for Report and Recommendation.

### B.    Facts & Procedural History

Petitioner was charged with armed robbery, assault with intent to commit murder, assault with intent to commit great bodily harm less than murder, felonious assault, being a felon in possession of a firearm and felony firearm.  (Rule 5 Materials, Doc. 6, Ex. 6 at 3-4.)  Petitioner was convicted of being a felon in possession of a firearm and felony firearm after a jury trial in the Wayne County Circuit Court held from October 16 through October 22, 2003.  (Pet., Doc. 1 at 1; Doc. 6 at Exs. 4-7.)  On November 10, 2003, Wayne County Circuit Judge Michael M. Hathaway sentenced Petitioner to two to five years for being a felon in possession of a firearm and ten years for possession of a firearm during the commission of a felony.  (Doc. 6, Ex. 7 at 17.)

The Michigan Court of Appeals opinion succinctly summarized the facts as follows:

> Defendant's convictions arise from an altercation with his former boss, Frederick Binno, during which both men were shot.  There was no dispute that two guns were involved, but the men disagreed over who initially possessed both guns.

(Doc. 6, Ex. 8 at 1.)  Petitioner's state court appellate brief adds that Petitioner testified that he had an agreement with Fred Binno ("Binno"), the manager of Platinum Collision, that Binno would arrange to have a friend of Petitioner's car stripped to obtain insurance money and that Binno and Petitioner would share equally in the money.  (Doc. 6, Ex. 8 at 48.)  Apparently Binno stripped the vehicle so well that the cost to replace the stripped parts exceeded the value of the car; therefore, the insurance company considered the car totaled and did not pay for the repair and replacement of the parts stripped.  (*Id.*)

In an attempt to help Petitioner recoup his loss, Binno hired Petitioner as his "bodyguard" in January 2003.  (*Id.*)  While working in that capacity at Platinum Collision, Petitioner saw two

guns on the premises: a "black revolver" and a "little silver gun." (*Id.*) Binno generally kept the little silver gun on his person, usually in his pocket. (*Id.*) Petitioner further testified that Binno sent others to buy ammunition for his guns. (Doc. 6, Ex. 8 at 48-49.) At some point before July 3, 2003 – the date the events giving rise to the criminal charges occurred – Petitioner ended his employment with Binno "because he noticed them doing illegal activities." (*Id.* at 49.) Apparently, Binno had not paid Petitioner the amount that Petitioner believed Binno owed him by the time he left Binno's employ.

On July 3, 2003, Binno called Petitioner back to work. When Petitioner arrived, Binno indicated that he wanted Petitioner to "burn up some cars at the other collision shop," which Petitioner refused to do. (*Id.*) Petitioner then asked Binno for the remaining money that Binno owed him. (*Id.*) The stories significantly diverge as to what happened next.

Petitioner contends that Binno pushed him and threw him towards a table, causing a chair to fall over. (*Id.*) Next, there was a knock at the door, Petitioner attempted to open the door and Binno shot him in the stomach and the calf, stating, "I'm going to kill you nigger." (*Id.*) Petitioner next contends that Binno's little silver gun that Binno kept in his back pocket "stuck," so Binno got his black gun from his desk drawer, the two struggled, and the black gun discharged, hitting Binno in the lower leg. (*Id.*) Petitioner states that he was afraid Binno and his men would try to kill him, so he grabbed a gun and left. (*Id.* at 49-50.) Petitioner could not remember what he did with the gun. He thought he might have drooped it outside Binno's business. (*Id.* at 50.) Petitioner then obtained a ride to the hospital where his stomach wound was attended to and where he was first interviewed by the police. (*Id.*)

Respondent's brief reveals that prosecution witnesses recounted a different version of events. Aaron Byrd ("Byrd") testified that Petitioner closed the door to Binno's office after he

went into the office. (Resp.'s Br., Doc. 5 at 5 (citing Trial Trans., Doc. 6, Ex. 4 at 75-76).) Byrd then heard scuffling, heard Petitioner demand money, heard what sounded like a desk moving, something hitting the floor, and then a bang against the door as if something had been pushed up against the door. (Dkt. 5 at 5.) Byrd tried to open the door but was unable to do so initially because something was pressing on the door. When Byrd was able to open the door, the "latch was hitched and it could only be opened from the inside." (*Id.*) However, Byrd was able to get into the office and, when he did, he saw Petitioner standing over Binno, with Binno leaning over the desk. (*Id.*) Byrd testified that he pushed Petitioner off Binno, turned away from Petitioner and toward Binno, and then heard a shot. Byrd ran out of the office and heard several more shots. (*Id.*) Byrd returned to the shop and saw Binno hopping because he had been shot. (*Id.*) Byrd then saw Petitioner come out of the shop holding a weapon that appeared to him to be a black revolver, possibly a .357. (Doc. 5 at 6.) Byrd picked up a silver handgun and spent shells from the office floor and put the gun in a desk drawer. (*Id.*) Byrd denied ever seeing that gun or any other guns at the shop before. (*Id.*)

Binno testified that he had not arranged for any meeting between himself and Petitioner but that on July 3, 2003, Petitioner came into his office and sat down, leaving the door open. (*Id.*) Petitioner asked Binno for money, and Binno denied owing Petitioner any money. Binno attempted to leave the office when Petitioner grabbed his hand, pushed him onto the desk, closed the door, demanded money, and pulled out a black revolver. (Doc. 5 at 7.) Binno stated that he gave Petitioner $200 in cash, but Petitioner demanded more. Binno was then able to slide under Petitioner and reach the handle on the door to his office which, once shut, locks automatically and can only be opened from the inside. (*Id.*) Binno testified that Byrd then ran into the office, Binno fell on the floor, and saw another gun in Petitioner's waistband. (*Id.*) Binno took the silver gun

out of Petitioner's waistband and was then shot in the leg at which point he simultaneously or soon thereafter pulled the trigger and fired shots from the gun he had removed from Petitioner's waistband. (*Id.*)  The silver gun would not work anymore and Binno noticed there was a bullet stuck in the chamber. (*Id.*)  Binno testified that he then saw that everyone had run out of the shop, so he "unjammed" the silver gun, came out of the office, threw the silver gun back into the office, and went to the hospital. (*Id.*)  Binno denied ever seeing the silver gun before and also denied ever keeping guns on the shop premises. (*Id.*)  Binno also denied that he ever agreed to strip a car for Petitioner. (Doc. 5 at 8.)  However, Binno did admit to sending an employee out to buy ammunition. (*Id.*)

Petitioner raised the following two issues on direct appeal:

I.   WHETHER DEFENDANT GREEN'S CONVICTION FOR FELON IN POSSESSION (AND THUS FELONY FIREARM) SHOULD BE VACATED WHERE THE PROSECUTION FAILED TO MEET ITS BURDEN OF PROOF REGARDING THE ELEMENTS OF THE CRIME RESULTING IN INSUFFICIENT EVIDENCE SUPPORTING THE CHARGE?

II.  WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO INSTRUCT THE JURY REGARDING SELF-DEFENSE?

(Doc. 6, Ex. 8 at 47.)  On February 24, 2005, the Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Green*, No. 252727, 2005 WL 433599 (Mich. App. Feb. 24, 2005).  On September 28, 2005, the Michigan Supreme Court denied leave to appeal. (Doc. 6 at Ex. 9, *People v. Green*, No. 128325 (Mich. Sept. 28, 2005).)

Petitioner filed a motion for relief from judgment with the Wayne County Circuit Court that the judge interpreted as raising the following claims: "(1) Failure of the People to file a written notice to seek enhancement; (2) Use of inaccurate information by the Court as a basis for sentencing; (3) A miscarriage of justice resulting from the Court misleading defendant to agree

with a stipulation excluding the mentioning of details forming the underlying basis for the 'felon in possession' charge; (4) Prosecutorial misconduct for mentioning defendant's prior felony conviction for theft or dishonesty; (5) Defendant's claim of being actually innocent of felony firearm (3rd offense) and felon in possession of a firearm; (6) Ineffective assistance of trial counsel." (Doc. 6, Ex.11 at 2.)  Wayne County Circuit Judge Hathaway denied the motion for relief from judgment on August 10, 2006, noting that all of the issues could have been raised in the direct appeal but were not. (*Id.*)  Leave for appeal from this order was denied by the Michigan Court of Appeals on July 19, 2007. (Doc. 6, Ex. 11 at 1.)  Leave was also denied by the Michigan Supreme Court on November 29, 2007, "because the defendant has failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] MCR 6.508(D)." (Doc. 6, Ex. 12 at 1.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on January 30, 2008, raising the following claims:

I.   PETITIONER'S CONVICTION FOR FELON IN POSSESSION OF A FIREARM (AND THUS FELONY FIREARM) SHOULD BE VACATED WHERE THE PROSECUTION FAILED TO MEET ITS BURDEN OF PROOF REGARDING THE ELEMENTS OF THE CRIME RESULTING IN INSUFFICIENT EVIDENCE SUPPORTING THE CHARGE.

II.  THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO INSTRUCT THE JURY REGARDING SELF-DEFENSE.

III. PETITIONER WAS DENIED HIS DUE PROCESS RIGHT UNITED STATES CONST. 14 AMEND [SIC] WHEN PETITIONER WAS NOT AFFORDED HIS 6TH AMEN [SIC] BILL OF RIGHTS EFFECTIVE ASST. OF COUNSEL.

IV.  WHERE SENTENCE ENHANCEMENT IS MANDATORY BY STATUTE RATHER THAN PERMISSIVE, THOSE OFFENSES WHICH PROVIDE FOR ENHANCEMENT FOR REPEAT OFFENDERS WITHIN THE STATUTES THEMSELVES, RATHER THAN THROUGH THE HABITUAL OFFENDER PROCESS, REQUIRES [SIC] THE PROSECUTION TO FILE A WRITTEN NOTICE OF HIS INTENT TO

SEEK TO ENHANCE THE PETITIONER'S SENTENCE WHICH IN THIS CASE THE PROSECUTOR DID NOT DO; THUS, DENYING PETITIONER OF HIS DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND MICHIGAN CONSTITUTION 1963 ART 1, SECTION 17.

V.   THE COURT ERRO [SIC] AS WELL WHEN IT USED INACCURATE INFORMATION TO BASE ITS SENTENCE THUS, DENYING PETITIONER DUE PROCESS RIGHTS.

VI.   PETITIONER IS ACTUAL AND FACTUAL [SIC] INNOCENT OF FELONY FIREARM THIRD AND FELON IN POSSESSION OF A FIREARM.

(Doc. 1 at 9-10.)

Respondent argues that Petitioner's first and second grounds for relief are without merit because the state court adjudications were neither contrary to nor an unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts. (Doc. 5 at 18-25.)  Respondent further argues that the remaining grounds are procedurally defaulted, waived, or without merit. (*Id.* at 26-31.)

## C.   Law and Analysis

### 1.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335,

135 L. Ed. 2d 827 (1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997). The current standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520.

The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See id.* at 1521-22. The state court decision, however, need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam). Errors in state procedure and

8

evidentiary rulings do not rise to the level of constitutional claims warranting habeas relief unless the error "'renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment'" or "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Broom v. Mitchell*, 441 F.3d 392, 405 (6th Cir. 2006) (internal citations omitted).

Pursuant to the AEDPA, this Court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *see also* 28 U.S.C. § 2254(e)(1).

### 2.    Procedural Default & Waiver

Respondent asserts that Petitioner procedurally defaulted habeas claims III through VI because he failed to raise them in his direct appeal, and instead raised them for the first time in his motion for relief from judgment. (Doc. 5 at 26-30.) Respondent also contends that Petitioner waived the claims presented here as Grounds IV (sentencing enhancement with two prior felony firearm convictions) and V (inaccurate sentencing information) because "not only did defense counsel not object to the fact that two felony firearm convictions were attributed to Petitioner, but he acquiesced in it after having talked to Petitioner about it" and because he was "afforded an opportunity to refute information regarding the scoring of the guidelines," but did not do so. (Doc. 5 at 29-30.)

### a.    Governing Law

When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is

procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000) (quoted with approval in *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006)). In addition, procedural default occurs where a petitioner fails to comply with a state procedural rule that required him to have done something at trial to preserve an issue, e.g., make a contemporaneous objection or file a motion for directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). Procedural default "may be avoided 'only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.'" *Broom*, 441 F.3d at 401 (citations omitted).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). The Sixth Circuit has set forth a four-part test for determining whether a prisoner's claim is procedurally defaulted and therefore barred from habeas review. *Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002); *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).

The first step of the procedural default analysis is to determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Maupin*, 785 F.2d at 138. Second, the court must determine whether the procedural sanction was actually enforced by the state courts – that is, whether the state courts actually based their decisions on the procedural rule. *Id*. "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of

the state courts . . . ."  *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).  Third, the federal

court must consider whether the procedural rule is an adequate and independent state ground on

which the state can rely to foreclose federal review of a federal constitutional claim.  *Maupin*, 785

F.2d at 138.  The fourth prong provides that, if the above three factors are met, the Court may still

excuse the default and address the merits of the claim if the petitioner can demonstrate that there

was cause for him to not follow the state's procedural rule and that he was actually prejudiced by

the alleged constitutional error.  *Id.*

     **b.**    **Application**

     I first suggest that Ground IV has been waived since Petitioner's counsel agreed that

attributing the two prior felony firearm convictions to Petitioner was appropriate. (Doc. 6, Ex. 7

at 3-4.) *See Johnson v. Sherry*, No. 2:06-CV-11214, 2008 WL 373345, at *7 (E.D. Mich. Feb. 12,

2008) (finding public trial claim procedurally defaulted where defense counsel consented to the

closure); *Parker v. Bobby*, No. 4:06-CV-02695, 2007 WL 3340047 at *5 (N.D. Ohio Nov. 6, 2007)

(agreement to sentence waived claim regarding sentence imposed).

     However, I suggest that Ground V cannot be considered waived because it was never

affirmatively consented to by Petitioner or his counsel.  Since the Michigan courts did not rely on

waiver when denying leave, I will consider the procedural default argument independent from any

waiver issue.

     In the instant case, the Michigan Circuit Court denied Petitioner's motion for relief from

judgment based on "MCR 6.503(D)(3) [which] provides that a defendant is not entitled to relief

if he alleges grounds for relief 'which could have been raised on appeal from the conviction and

sentence . . . ,' unless defendant has 'good cause' and 'actual prejudice,' none of which are evident

here."  (Doc. 6, Ex. 11 at 3.)  The Michigan Court of Appeals simply denied leave without

explanation and the Michigan Supreme Court denied leave "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Doc. 6, Ex. 11 at 1, Ex. 12 at 1.)

Although denial of relief in a one sentence opinion under MCR 6.508 may not appear to be a "reasoned" opinion, the Sixth Circuit has held that a Michigan appellate court's "summary invocation of MCR 6.508(D) made clear that the state courts' decision to deny relief rested exclusively on a state procedural rule." *Spencer v. Booker*, 254 Fed. App'x 520, 524 (6th Cir. 2007).[1]

I therefore suggest that, because the Michigan courts relied on the procedural bar that the issues contained in Grounds III through VI could have been but were not raised in the trial court until the motion for relief from judgment, Petitioner's claims raised in Grounds III through VI are in fact procedurally defaulted. Thus, this Court may only address the merits of these claims if Petitioner can show that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in Petitioner's case.

Cause exists if there is an "objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 752. It is the Petitioner's burden to demonstrate both cause and prejudice. *Simpson*, 238 F.3d at 408. Alternatively, courts may excuse a procedural default if there is a fundamental miscarriage of

---

[1]The *Spencer* court agreed with Sixth Circuit's decision in *McCray v. Metrish*, 232 Fed. App'x 469 (6th Cir. 2007), which declined to follow *Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004) (holding that it was not clear that summary order relied on a procedural bar as opposed to the non-procedural rule that petitioner failed to meet his burden of establishing entitlement to the relief requested thus finding that a denial of relief under MCR 6.508(D) did not establish procedural default). *Abela* departed from precedent such as *Luberda v. Trippett*, 211 F.3d 1004, 1006 (6th Cir. 2000) (summary invocation of MCR 6.508(D) established exclusive reliance on a procedural rule thus finding procedural default). The court in *McCray*, and followed by the court in *Spencer*, relied on the fact that "absent *en banc* consideration to overrule a published opinion of the circuit, the *Abela* court could not have overruled *Luberda* and its progeny." *Spencer*, 254 Fed. App'x at 524.

justice such as a "constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

"[I]neffective assistance of counsel can constitute 'cause,' so long as that ineffective assistance of counsel claim itself is not procedurally defaulted." *Haliym v. Mitchell*, 492 F.3d 680, 691 (6th Cir. 2007). In other words, an ineffective assistance of counsel claim must be presented "to the state courts as 'an independent claim before it may be used to establish cause for a procedural default . . . .'" *Scuba v. Brigano*, 527 F.3d 479, 487 (6th Cir. 2007). "Where ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 Fed. App'x 520, 525 (6th Cir. 2007). The Supreme Court has explained that,

> [a]lthough we have not identified with precision exactly what constitutes 'cause' to excuse procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing to preserve the claim for review in state court will suffice. Not just any deficiency in counsel's performance will do, however, the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is *itself* an independent constitutional claim.

*Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to,

not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez*

*v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007).

Second, the movant must show that he was prejudiced by the deficiency to such an extent

that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to

show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.*

Rather, the movant must show that, but for counsel's errors, the result would have been favorably

different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland*

test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is

that counsel's unprofessional errors so upset the adversarial balance between defense and

prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v.*

*Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights

the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to

ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court

clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that
> counsel's errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome
> determination, without attention to whether the result of the proceeding was
> fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Here, although defense counsel may have acquiesced in conduct complained of on appeal

and in this petition, a review of the record reveals that defense counsel actively cross-examined

prosecution witnesses, presented a thorough defense, including Petitioner's own testimony, and

zealously argued to the jury on behalf of Petitioner at trial and at Petitioner's sentencing. Therefore, I suggest that counsel's performance was not deficient and that Petitioner was not deprived of a fair trial.   Therefore, I suggest that ineffective assistance of counsel cannot support habeas relief, nor can it provide cause to excuse procedural default.

### 3.   Remaining Claims

### a.   Insufficient Evidence and Actual Innocence Claims - Grounds I and VI

Ground I asserts that there was insufficient evidence of possession of a firearm to convict Petitioner and Ground VI asserts actual and factual innocence.   Prisoners asserting "actual innocence" as a gateway to consideration of defaulted habeas claims "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"   *House v. Bell*, 547 U.S. 518, 536, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). Since Petitioner offers no new evidence, his claim of actual innocence in Ground VI will be considered as a restatement of Ground I that there was insufficient evidence to convict him.

"[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required" by the due process guarantee of the Fourteenth Amendment.   *In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).   In considering challenges based on sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original); *accord Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).   "[T]he standard is not whether the evidence is sufficient to convince the habeas court of petitioner's guilt beyond a reasonable doubt[,] [n]or does that standard require the prosecution to rule out every

hypothesis except that of guilt beyond a reasonable doubt." *Scott v. Perini*, 662 F.2d 428, 431-32 (6th Cir. 1981) (footnote omitted).  In addition, circumstantial evidence alone can support a conviction unless it "amounts to only a reasonable speculation and not sufficient evidence." *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

When considering sufficiency of the evidence, the habeas court engages in a two-step analysis:

> First, we must ask whether the evidence itself was sufficient to convict under *Jackson*.  The inquiry ends if we determine that there was sufficient evidence to convict [petitioner].  If we find that the evidence is insufficient to convict, we must then apply AEDPA deference and ask whether the state court was 'objectively reasonable' in concluding that a rational trier of fact could have found [petitioner] guilty beyond a reasonable doubt.  The law therefore 'commands deference at two levels.'

*Saxton v. Sheets*, 547 F.3d 597, 601-02 (6th Cir. 2008) (citations omitted).

In the instant case, Petitioner was found not guilty on the assaultive crimes and was convicted of being a felon in possession of a firearm and of use of a firearm during the commission of a felony.  In Michigan, possession of a firearm is a necessary element in both offenses for which Petitioner was convicted.  Possession may be actual or constructive.  In *Parker v. Renico*, 506 F.3d 444, 449 (6th Cir. 2007), the Sixth Circuit observed that "Michigan courts construe their constructive possession rules to mirror those of federal law, under which proximity alone never suffices. . . . [Instead,] [a]s Michigan's highest court recognizes, the 'indicia of control' element [is] require[d] . . . to establish constructive possession."  *Id.* (quoting *People v. Wolfe*, 440 Mich. 508, 489 N. W. 2d 4, 6 (1991) (no constructive possession where there was no evidence defendant attempted to use or reach for gun when police entered the apartment where defendant attempted to sell drugs because there was no indicia of control beyond presence, awareness, and ability to reach for the weapon)).

16

"Therefore, in assessing whether the evidence against [petitioner] sufficed for a rational jury to convict him of possessing a firearm beyond a reasonable doubt, we view the facts through the usual constructive-possession lens of 'indicia of control.'" *Parker*, 506 F.3d at 450.  In *Parker*, the Sixth Circuit affirmed the lower court's grant of habeas relief based on the prosecution's failure to prove the possession element of the felony firearm charge despite evidence that petitioner attempted to flee the car after being caught, that the driver opened his door during the high-speed chase (to fire or to throw gun away), and despite the state court's deduction that because the other passenger in the back seat with the petitioner had shot at officers and thrown his gun out the window, that the remaining gun in the backseat must have been the petitioner's gun.  The Sixth Circuit noted that the "constructive-possession-by-elimination chain of reasoning would have more force if [petitioner] had been convicted of *any* of the substantive crimes charged[,] including assault." *Parker*, 506 F.3d at 451 (emphasis in original).

In the instant case, if only Petitioner's version of the events had been presented, it would pose a much closer question as to whether Petitioner had the requisite indicia of control over any gun since Petitioner testified that both guns were owned, stored and possessed by Binno and that his first possession of any gun was during the struggle with Binno after Petitioner had been shot. However, Petitioner's version was directly contradicted by Binno's testimony that Petitioner brought the guns to his office and that Binno did not keep guns at his shop.[2]  "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any

---

[2] I note that identification of the owner of the guns is not needed to establish possession. *Thompson v. Bock*, 215 Fed. App'x 431, 437 (6th Cir. 2007) (holding that a rational trier of fact could have found the petitioner possessed firearms that were owned by his wife but were found in the bedroom he shared with his wife, one under the mattress and the other in the closet, noting that ownership is not a requirement for constructive possession under Michigan law).

such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the proper function of the jury, not a federal habeas court, to resolve such evidentiary conflicts as the ones presented on the instant facts. *See also Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).

Although Binno's credibility may have been suspect, it is not a federal habeas court's role to judge credibility or weigh evidence. On this record, I suggest that there is sufficient evidence for a rational trier of fact to have found that the essential elements of the crime, including possession of a firearm, were proven beyond a reasonable doubt. Since I suggest that sufficient evidence exists, the inquiry ends and we need not ask whether the state court was "objectively reasonable" in its conclusion. *See Saxton,* 547 F.3d at 601-02. I therefore suggest that this ground does not support habeas relief.

### b.      Failure to Give Jury Instruction on Self-Defense – Ground II

I suggest that this ground cannot provide a basis for habeas relief since Petitioner was not convicted on any of the assault charges. Thus, any error in failing to give the instruction was harmless. *See Neder v. United States*, 527 U.S. 1, 11, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *California v. Roy*, 519 U.S. 2, 117 S. Ct. 337, 136 L. Ed. 2d 266 (1996). I therefore suggest that this ground does not support habeas relief.

### c.      Sentencing Claims – Grounds IV and V

Claims challenging the imposition of a sentence that falls within the limits prescribed by the state legislature are typically not cognizable in habeas corpus proceedings. *Estelle, supra; Hutto v. Davis,* 454 U.S. 370, 373-74, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000). Therefore, to prevail on this claim, Petitioner must show that the state court sentenced him on the basis of "misinformation of constitutional magnitude."

*United States v. Tucker*, 404 U.S. 443, 447, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972) (prohibiting sentencing enhancement where prior felony conviction was obtained in violation of Sixth Amendment right to counsel); *Koras v. Robinson*, 123 Fed. App'x 207, 213 (6th Cir. 2005). Due process does not require notice in advance of trial that a habitual offender or other sentencing enhancement for recidivist conduct will occur; due process simply requires that a defendant be given reasonable notice and an opportunity to be heard relative to the enhancement. *Oyler v. Boles*, 368 U.S. 448, 452, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962).

In the instant case, Petitioner contends that the prosecution failed to provide a notice of intent to seek enhancement within twenty-one days of arraignment. (Doc. 1 at 76.) However, Petitioner concedes that he and his counsel were given notice in the pre-sentence report, were provided with an opportunity to discuss the existence and validity of the prior convictions, and took advantage of that opportunity on the date of sentencing. (Doc. 1 at 77-78; Doc. 6, Ex. 7 at 2-8.) In addition, the record reveals that Petitioner was notified of the enhancement charges at the preliminary examination held on July 29, 2003. (Doc. 6, Ex. 2 at 3.) I suggest that due process requires no more than what Petitioner actually received. *See Tolbert v. LeCureaux*, 811 F. Supp. 2d 1237, 1240-41 (E. D. Mich. 1993) (no due process violation where record was ambiguous on whether petitioner was given notice of intent to seek enhancement at preliminary examination or at trial); *Bailey v. Smith*, No. 06-14099, 2008 WL 2607830, at *23 (E.D. Mich. June 30, 2008).

Petitioner also contends that some of the information used to enhance was inaccurate, i.e., that he was only previously convicted of felony firearm once and not twice. (Doc. 1 at 79.) At Petitioner's sentencing hearing, Petitioner's counsel noted that the pre-sentence report properly listed two prior felony firearm convictions. (Doc. 6, Ex. 7 at 4.) For the reasons stated above, I suggest that Petitioner was not deprived of his due process rights to notice and an opportunity to

challenge the validity of the convictions used to enhance his sentence. *See Hobson v. Robinson*, 27 Fed. App'x 443, 445 (6th Cir. 2001) (no state court unreasonable application of the law in denying relief where the petitioner failed to object to the use of uncounseled juvenile adjudications in enhancing sentence). In addition, review of Petitioner's information on the Offender Tracking Information System ("OTIS") confirms that Petitioner was previously convicted of two counts of felony firearm based on conduct occurring on September 17, 1989, and September 19, 1989.

Finally, to the extent that Petitioner contends that his sentence violated the principles announced in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), this contention also lacks merit. The Michigan Supreme Court has determined that *Booker* and *Blakely* do not apply to Michigan's indeterminate sentencing scheme. *People v. McCuller*, 479 Mich. 672, 676-68, 739 N. W. 2d 563 (2007); *People v. Drohan*, 475 Mich. 140, 164, 715 N. W. 2d 778 (2005). I therefore suggest that Petitioner has not stated a claim for habeas relief based on any alleged sentencing errors.

### d.   Conclusion

For all the reasons stated above, I suggest that the petition for habeas corpus be denied because the claims raised are either procedurally defaulted, lack merit or constitute harmless error.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596

(6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                     s/ Charles E Binder
                                     CHARLES E. BINDER
Dated: February 19, 2009             United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Raina L. Korbakis, served via first class mail on Wendell Green #205918, Ryan Correctional Facility, 17600 Ryan Road, Detroit, MI 48212, and served on District Judge Borman in the traditional manner.

Date: February 19, 2009          By     s/Patricia T. Morris
                                 Law Clerk to Magistrate Judge Binder